UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                      Case No. 8:10-cr-327-T-30EAJ

MARTIS ANTHONY BUNTON, JR.
_____

## **ORDER**

This cause came on for consideration upon Defendant's Challenge to the Government's Second Amended Information and Notice of Prior Conviction (Dkt. 329) and the United States' Opposition to same (Dkt. 337). On October 7, 2011, the Court held a hearing on Defendant's Challenge in compliance with the procedural requirements of 21 U.S.C. § 851. The Court reserved ruling after hearing the parties' arguments about the validity of Defendant's prior convictions. Upon consideration of the parties' respective arguments, the papers, and upon being otherwise advised of the file and the case law related to this issue, the Court concludes that Defendant's Challenge must be denied.[1]

## **INTRODUCTION**

Defendant Martis Anthony Bunton, Jr. requests this Court to invalidate his 2009 state-court drug convictions and impose his sentence without regard to the statutory enhancements authorized under 21 U.S.C. §§ 841(b)(1)(B)(viii) and 851. Bunton relies on the recent

---

[1] The Court notes that Defendant withdrew his prior Notice Challenging Previous Convictions (Dkt. 224) on the record at the October 7, 2011 hearing.

holding of *Shelton v. Sec'y, Dep't of Corrs.*, – F. Supp. 2d –, Case No. 6:07-cv-839-Orl-35-KRS, 2011 WL 3236040 (M.D. Fla. July 27, 2011) in support of his request.

In *Shelton*, the court concluded that Florida Statute § 893.13 is facially unconstitutional. The court reasoned that the Florida Legislature's 2002 amendment to Florida's Drug Abuse Prevention and Control law, codified at Fla. Stat. § 893.101, eliminated any *mens rea* requirement for the drug offenses enumerated in Fla. Stat. § 893.13, thus rendering these offenses strict liability offenses. The court then held that the statute could not pass constitutional muster as a strict liability statute because it subjects its offenders to "harsh penalties," "gravely besmirches an individual's reputation," and "punishes otherwise innocuous conduct without proof of knowledge or other criminal intent," which violates the Due Process Clause of the United States Constitution. 2011 WL 3236040, at *9.

The Court concludes that the 2002 amendment does not result in a facially unconstitutional statute because even without a *mens rea* requirement, it still satisfies due process. While the statute has no element requiring guilty knowledge of the illicit nature of the substance, the State still must prove that a defendant charged with a drug offense enumerated in Fla. Stat. § 893.13 had knowledge of his <u>possession</u> of the substance.[2] In light of this surviving element of knowledge and upon consideration of Supreme Court precedent

---

[2] It is important to note that the State did not have to prove any element of knowledge in *Shelton*. *See, generally* 2011 WL 3236040 . Thus, *Shelton* is distinguishable to the extent that the court there was dealing with a violation of section 893.13 that, according to the jury instructions then in use, did not require the State to prove anything other than the defendant's delivery of an illegal substance. *See infra* at Part II of the Discussion, n.2.

regarding the constitutionality of public welfare offenses, the Court holds that Florida's Drug Abuse Prevention and Control law comports with the Due Process Clause of the United States Constitution.

## BACKGROUND

**I.     Relevant Facts**

On April 16, 2009, Bunton was convicted of three separate cases in the Circuit Court for Hillsborough County, Florida, for possession and delivery of cocaine. Bunton was placed on probation. The charges in the instant case occurred while Bunton was on probation. Specifically, on August 4, 2010, a federal grand jury charged Bunton in Counts One through Three of a five-count indictment with: (1) conspiracy to distribute five kilograms or more of cocaine; (2) conspiracy to distribute 50 grams or more of cocaine base; and (3) possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Dkt. 1).

On August 11, 2010, the government filed an Information and Notice of Prior Conviction (Dkt. 24). The government based its Notice exclusively on Bunton's April 16, 2009 state-court convictions. The Information and Notice of Prior Conviction was subsequently amended on March 8, 2011 (Dkt. 214) and June 13, 2011 (Dkt. 273).

In May 2011, Bunton pled guilty to Count One of the Indictment under a plea agreement (Dkt. 272). The Court accepted Bunton's guilty plea (Dkt. 285) and Bunton is now awaiting his sentence.

On July 27, 2011, the district court held in *Shelton v. Sec'y, Dep't of Corrs.*, – F. Supp. 2d –, Case No. 6:07-cv-839-Orl-35-KRS, 2011 WL 3236040 (M.D. Fla. July 27, 2011), that Fla. Stat. § 893.13 is facially unconstitutional. On September 9, 2011, Bunton filed a response to the government's Notice of Prior Convictions (Dkt. 329). Relying on *Shelton*, Bunton challenges the validity of his prior drug convictions under Fla. Stat. § 893.13(1)(a)1. Specifically, Bunton claims that *Shelton* renders his prior state convictions invalid, thus precluding any enhancement in his sentence under section 851.

## II.     Procedure for Adjudicating Contested Section 851 Enhancements

Under section 851(a)(1), the drug recidivist enhancement provisions of Title 21 are triggered when the government, prior to trial or the defendant's guilty plea, files and serves on the defendant an information describing the prior convictions on which the enhancement is based. To challenge the validity of a prior conviction alleged in the government's information, the defendant must file a written response with the court. If the defendant challenges the validity of his conviction, "a hearing like that contemplated under section 2254 is exactly what section 851 requires." *U.S. v. Sanchez*, 138 F.3d 1410, 1417 (11th Cir. 1998).

The Court notes that the parties complied with the procedural requirements of 21 U.S.C. § 851. The Court conducted the section 851 hearing, as set forth above, on October 7, 2011. At the hearing, Bunton relied exclusively on *Shelton* to request that the Court hold his prior convictions invalid.

As set forth below, the Court concludes that Bunton's prior convictions are valid and may be used to enhance his sentence because Fla. Stat. § 893.13 is facially constitutional.

## DISCUSSION

**I.     Where It All Begins - Florida's Drug Abuse Prevention and Control law**

As set forth in *Shelton* regarding the history of Florida's Drug Abuse Prevention and Control Law, prior to May 2002, Florida law provided, *inter alia*:

> (1) (a) Except as authorized by this chapter and chapter 499, it is unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance. Any person who violates this provision with respect to:
>
> 1. A controlled substance named or described in s. 893.03(1)(a), (1)(b), (1)(d), (2)(a), (2)(b), or (2)(c) 4., commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
>
> ...
>
> (6) (a) It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter. Any person who violates this provision commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

2011 WL 3236040, at *1-*2 (*citing* Fla. Stat. § 893.13(1)(a),(6)(a) (2000)).

In *Chicone v. State,* 684 So. 2d 736 (Fla. 1996), the Florida Supreme Court discussed whether section 893.13 included <u>guilty knowledge</u> as an element of the offense. The court concluded that:

> We believe it was the intent of the legislature to prohibit the knowing possession of illicit items and to prevent persons from doing so by attaching a substantial criminal penalty to such conduct. Thus, we hold that the State was required to prove that Chicone knew of the illicit nature of the items in his possession. As all agree, including the State, the legislature would not ordinarily criminalize the "innocent" possession of illegal drugs. Silence does not suggest that the legislature dispensed with scienter here.

*Id.* at 744. Subsequently, in *Scott v. State,* 808 So. 2d 166, 170–72 (Fla. 2002), the Florida Supreme Court reiterated that "knowledge is an element of the crime of possession of a controlled substance, a defendant is entitled to an instruction on that element, and ... [i]t is error to fail to give an instruction even if the defendant did not explicitly say he did not have knowledge of the illicit nature of the substance."

In sum, the Florida Supreme Court in *Chicone* and *Scott* instructed Florida courts to infer a *mens rea* element of knowledge of the <u>illicit nature of the substance</u> absent specific language from the Florida Legislature that knowledge of the illicit nature of the controlled substance is <u>not</u> an element of any offense under chapter 893. Notably, these decisions did not alter previous decisions of Florida courts, which inferred an element of knowledge <u>of the presence of the substance</u>. Rather, *Chicone* and *Scott* supplemented those prior decisions, holding that, because the statute was silent as to a requirement of guilty knowledge, the court would infer that the Florida Legislature intended the state to prove knowledge of the presence of the substance <u>and</u> of the illicit nature of the substance. *See generally Wright v. State*, 920 So. 2d 21 (Fla. 4th DCA 2005).

In May 2002, the Florida Legislature enacted amendments to Florida's Drug Abuse Prevention and Control Law in direct response to the holdings in *Chicone* and *Scott* as follows:

> (1) The Legislature finds that the cases of *Scott v. State*, Slip Opinion No. SC94701 (Fla. 2002) and *Chicone v. State*, 684 So. 2d 736 (Fla. 1996), holding that the state must prove that the defendant knew of the illicit nature of a controlled substance found in his or her actual or constructive possession, were contrary to legislative intent.
>
> (2) The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.
>
> (3) In those instances in which a defendant asserts the affirmative defense described in this section, the possession of a controlled substance, whether actual or constructive, shall give rise to a permissive presumption that the possessor knew of the illicit nature of the substance. It is the intent of the Legislature that, in those cases where such an affirmative defense is raised, the jury shall be instructed on the permissive presumption provided in this subsection.

Fla. Stat. § 893.101.

The Florida Legislature made it clear through these amendments that it did not intend the offenses under chapter 893 to include an element of guilty knowledge, as the Florida Supreme Court had assumed in *Chicone* and *Scott*.

The amendments also created an affirmative defense for lack of knowledge of the illicit nature of a controlled substance, such that, when a defendant asserted such a defense, the "possession of a controlled substance, whether actual or constructive, shall give rise to

a permissive presumption that the possessor knew of the illicit nature of the substance." Fla. Stat. § 893.101(3).

In response to the enactment of section 893.101, the Florida Supreme Court adopted a new set of standard jury instructions. *In re Standard Jury Instructions in Criminal Cases* (No. 2005-3), 969 So. 2d 245 (Fla. 2007). The current Florida standard criminal jury instruction 25.7 provides:

> To prove the crime of (crime charged), the State must prove the following three elements beyond a reasonable doubt:
>
> 1. (Defendant) possessed a certain substance.
> 2. The substance was (specific substance alleged).
> 3. (Defendant) had knowledge of the presence of the substance.

After the 2002 statutory amendments, Florida's district courts of appeals upheld the constitutionality of Florida's Drug Abuse Prevention and Control Law, without opining in any detail about whether the elimination of guilty knowledge comported with the Due Process Clause of the United States Constitution. *See, e.g.*, *Williams v. State*, 45 So. 3d 14 (Fla. 1st DCA 2010); *Johnson v. State*, 37 So. 3d 975 (Fla. 1st DCA 2010); *Burnette v. State*, 901 So. 2d 925 (Fla. 2d DCA 2005); *Wright v. State*, 920 So. 2d 21 (Fla. 4th DCA 2005). No reported opinion held, as the district court held in *Shelton*, that the 2002 amendments dispensed with any *mens rea* element, and several noted that the general intent requirement remained intact.

In short, the Florida district courts of appeals' decisions did not subject the statute to the analysis contained in *Shelton* or *Chicone*. Rather, several decisions held that the statute

made the enumerated offenses general intent crimes because the state still had to prove knowledge of the possession of the controlled substance as it was required to do prior to the holdings in *Chicone* and *Scott*. The courts also held that the affirmative defense created in section 893.101(3) did not violate due process by abrogating the state's burden of proving the defendant's guilt beyond a reasonable doubt. As summarized in *Wright*:

> The statute does two things: it makes possession of a controlled substance a general intent crime, no longer requiring the state to prove that a violator be aware that the contraband is illegal, and, second, it allows a defendant to assert lack of knowledge as an affirmative defense. There is a caveat that, once this door is opened, either actual or constructive possession of the controlled substance will give rise to a permissive presumption that the possessor knew of the substance's illicit nature, and the jury instructions will include this presumption. §893.101(3), Fla. Stat. The knowledge element does not need to be proven, but if the defendant puts it at issue, then the jury is going to hear about it, and the defendant must work to rebut the presumption.

*Id.* at 24. Accordingly, in order to prove a possession offense after the 2002 amendments, the state was required to "prove that the defendant knew that he possessed a substance, which was in fact [an illicit substance], but the state does not have to prove that the defendant knew it was [an illicit substance]." *Miller v. State*, 35 So. 3d 162, 163 (Fla. 4th DCA 2010).

**II.     What's in a Name: General Intent Verses Strict Liability**

*"What's in a name? That which we call a rose*
*By any other name would smell as sweet."*

-William Shakespeare

The *Shelton* decision has been criticized for making the assumption that the amendments to Florida's Drug Abuse Prevention and Control Law rendered the offenses

enumerated in Fla. Stat. § 893.13 strict liability offenses.[3] The criticism is largely based on the argument that the 2002 amendments did not alter Florida law to the extent it held prior to *Chicone* and *Scott* that the drug offenses were general intent crimes. Notably, the jury instructions in *Chicone* required "knowledge of the presence of the substance." 684 So. 2d at 745. As one Florida trial court noted: "the court [in *Chicone*] was *not* choosing between a strict liability interpretation and an interpretation engrafting a knowledge element: it was choosing between two interpretations that each had a knowledge element, with the difference being how specific the knowledge needed to be". *State of Florida v. Barnett, et al.*, Case No. 11-CF-003124 (Fla. Cir. Ct. 13th Jud. Cir. Aug. 12, 2011).

The main shortcoming in the Florida courts' criticism of *Shelton* is that they do not address the federal due process concerns in any detail. In other words, the courts conclude their legal analysis after they determine that *Shelton* incorrectly applied a strict liability analysis to the criminal offenses enumerated in chapter 893, presumably because they assume that a general intent criminal offense is *a fortiori* constitutional.

The Court disagrees that the due process analysis should end with a finding that the 2002 amendments rendered the offenses enumerated in chapter 893 general intent crimes as opposed to strict liability crimes. Focusing on the labeling of the statute is a distraction from

---

[3] Notably, *Shelton* involved a delivery offense, not a possession offense. *See generally* 2011 WL 3236040. And the jury instructions used in *Shelton* did not include <u>any</u> element of knowledge. *Id.* at *3. Thus, the Court agrees with the *Shelton* decision to the extent it applies to the crime of delivery of a substance and the jury instructions fail to require the state to prove the defendant had knowledge of the presence of the substance he or she was delivering. Although this issue is not currently before the Court, the Court notes that the confusion created by *Shelton* could be remedied, in part, by amending the Florida jury instructions for a delivery offense under chapter 893 to make it clear that the state still has to prove knowledge of the presence of the substance.

the salient issue of whether the statute violates an individual's right of due process. Thus, the Court begins its journey through a virtual legal quagmire by addressing the following question: regardless of whether the remaining element of knowledge of the presence of the substance renders the crimes under chapter 893 general intent crimes or strict liability crimes, is that surviving element of knowledge sufficient under due process standards? To answer that question, the Court must analyze United States Supreme Court precedent on public welfare offenses.

### III. Public Welfare Offenses[4] - What Are the Constitutional Parameters?

> [P]reventing and dealing with crime is much more the business of the States than it is of the Federal Government, and ... we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally 'within the power of the State to regulate procedures under which its laws are carried out,' ... and its decision in this regard is not subject to proscription under the Due Process Clause unless *'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'*

*Montana v. Egelhoff*, 518 U.S. 37, 44 (1996) (emphasis added) (*quoting Patterson v. New York,* 432 U.S. 197, 201-202 (1977)).

---

[4] "'Public welfare' offenses share certain characteristics: (1) they regulate 'dangerous or deleterious devices or products or obnoxious waste materials,' *see United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 565 (1971); (2) they 'heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare,' *Morissette,* 342 U.S. 246, 254 (1952); and (3) they 'depend on no mental element but consist only of forbidden acts or omissions,' *id.* at 252-53. Examples of such offenses include Congress' exertion of its power to keep dangerous narcotics, hazardous substances, and impure and adulterated foods and drugs out of the channels of commerce." *Staples v. U.S.*, 511 U.S. 600, 629 (1994) (*J. Stevens, dissenting*).

The requirement that the state prove some element of *mens rea* is an established principle of American criminal law. As the Supreme Court noted in *Morissette v. United States*, 342 U.S. 246, 250 (1952):

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a 'vicious will.'

Because of the importance of requiring guilty knowledge, the Supreme Court held that where Congress is silent on the issue of knowledge, the Court would assume it was Congress' intent to require the state to prove guilty knowledge. *See generally Staples v. U.S.*, 511 U.S. 600 (1994). In *Staples*, the Court noted that offenses without a guilty knowledge requirement are disfavored, and when a statutory scheme carries a penalty of imprisonment of some significance, absent clearly stated legislative intent, the Court will read into the statute a guilty knowledge requirement. *Id.* at 619-20. Notably, the Florida Supreme Court followed this reasoning in *Chicone* and *Scott*, discussed *supra*.

That being said, the Supreme Court has acknowledged that there are some crimes for which Congress could constitutionally <u>eliminate</u> criminal intent to further a public policy. Indeed, the Supreme Court noted in *Morissette* that it has never undertaken to delineate a

precise line for distinguishing between crimes that require a guilty knowledge element and crimes that do not. 342 U.S. at 248.

The Court finds *United States v. Balint,* 258 U.S. 250 (1922), instructive on this issue. In *Balint*, the defendants were indicted for violating the Narcotic Act of 1914, which made it unlawful "for any person to sell, barter, exchange, or give away" certain drugs. The district court dismissed the indictment because it did not charge that the defendants knew the drugs were illegal, even though the law did not specifically make such knowledge an element of the offense. The Supreme Court reversed, holding "in the prohibition or punishment of particular acts," the legislature may "in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.'" *Id.* at 252 (*quoting Shevlin-Carpenter Co. v. Minn.,* 218 U.S. 57, 70 (1910)). The Court noted examples found in regulatory measures in the exercise of the government's police power where the underlying purpose of the statute was centered on the advancement of some social purpose rather than the punishment of the crime. *Id.*

In *Balint,* the Court determined that the congressional purpose of the Narcotic Act was "to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him." *Id.* at 254. With respect to the traditional rule making guilty knowledge a requisite element of every crime, the Court declared that there is a modification of this rule where the purpose of the statute would be obstructed by such a requirement. *Id.*; *see also United States v. Berhman*, 258 U.S. 280 (1922) (upholding the criminal prosecution

of the sale or delivery of opium and cocaine under the Anti-Narcotic Act where the statute did not require intent or knowledge as an element of the offense).

In *In United States v. Freed*, 401 U.S. 601, 609 (1971), the Supreme Court held that an indictment for conspiracy to possess "destructive devices", i.e., hand grenades, in violation of the National Firearms Act, was not defective for absence of an allegation of specific intent, or knowledge that the grenades were unregistered. The Court treated an offense under the Act as falling within the list of exceptions, "especially in the expanding regulatory area involving public health, safety and welfare," to the general requirement of proof of *mens rea* or "vicious will." *Id.* at 607-10. The *Freed* court noted "[t]his is a regulatory measure in the interest of public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act. They are highly dangerous offensive weapons, no less dangerous than the narcotics involved in *United States v. Balint*, 258 U.S. 250, 254, 42 S.Ct. 301, 303, 66 L.Ed. 604, where a defendant was convicted of sale of narcotics against his claim that he did not know the drugs were covered by a federal act." *Id.* at 609.

Similarly, in *United States v. International Minerals Corp.*, 402 U.S. 558, 564-65, the Supreme Court stated:

> In *Balint* the Court was dealing with drugs, in *Freed* with hand grenades, in this case with sulfuric acid and other dangerous acids. Pencils, dental floss, paper clips may also be regulated. But they may be the type of products which might raise substantial due process questions if Congress did not require . . . '*mens rea*' as to each ingredient of the offense. But where, as here and as in *Balint* and *Freed,* dangerous or deleterious devices or products or obnoxious waste

> materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation.

Notably, in *Morissette*, the Supreme Court observed that, as common law developed, "[e]xceptions [to guilty knowledge] came to include sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached the age of consent." 342 U.S. at 251 n. 8; *see also United States v. X-Citement Video, Inc.,* 513 U.S. 64, 72 n. 2; *Feliciano v. McNeil*, 2009 WL 1971635, at *13 (N.D. Fla. July 6, 2009) (holding Florida's statutory rape law did not violate federal due process). It is also notable that federal courts uphold the constitutionality of strict liability offenses involving the production of child pornography because "protecting children from sexual exploitation and abuse is a governmental objective of critical importance". *See United States v. Fletcher*, 634 F.3d 395, 403 (7th Cir. 2011).

Importantly, the Supreme Court cited *Balint* in *Staples*, and reiterated its language in *Morissette* that "neither this court nor any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not." *Staples*, 511 U.S. at 620.

And so this Court must determine where Florida's Drug Abuse Prevention and Control Law falls on this imprecise line of constitutionality. The Court begins with the undisputed fact that the criminal offenses enumerated in chapter 893 are clearly public welfare offenses. Indeed, as aptly noted by a Florida circuit court:

> The defendants attempt to minimize the gravity of the crime of possession of a controlled substance, arguing that such crimes are not dangerous to the public welfare (as is, for instance, statutory rape). Therefore, they argue, the legislative creation of a strict liability crime for the possession of such contraband criminalized an offense not rationally related to a legitimate public purpose. Such a suggestion, however, is starkly belied by the reality of multiple generations of Floridians whose lives have been forever marred by the delivery, distribution, and use of controlled substances. While this Court is aware of the public debate surrounding the financial, social, and emotional ramifications created by the 'war on drugs,' the defendants' attempt to diminish the magnitude of drug crimes and drug abuse on the public welfare is disingenuous, at best.

*State of Florida v. Beattie, et al.*, Case No. 2011CF004718AXX (Fla. Cir. Ct. 15th Jud. Cir. Sept. 6, 2011).

The next issue is whether a requirement of knowledge of only the presence of the substance is sufficient to comport with federal due process. The Court concludes that it is constitutionally sufficient in light of the Supreme Court precedent discussed *supra* holding that a *mens rea* element is not required in public welfare offenses. Notably, if the State can prove that the defendant knew of the substance's presence, one can reasonably infer that the defendant should have been aware that the substance could be regulated by the Florida legislature. Indeed, this nation has been dealing with the "war on drugs," since it was launched by President Richard Nixon in 1971. And to the extent that the statute criminalizes truly innocent conduct, such as the scenario where the defendant thinks he is delivering or possessing a substance as innocuous as flour or sugar, the defendant may (<u>but is not required</u>

to) assert the affirmative defense enumerated under section 893.101(2) of "lack of knowledge of the illicit nature" of the controlled substance.

It bears repeating that common sense dictates, given the numerous drug polices that are designed to discourage the production, distribution, and consumption of illegal drugs, that one can reasonably infer guilty knowledge when a defendant is in possession of an illegal substance and knows of the substance's presence. In other words, having knowledge of the presence of the substance should alert the defendant to the probability of strict regulation. As the Supreme Court noted in *Balint*, in such cases, it is constitutionally permissible to "place the burden on the defendant to ascertain at his peril whether [his conduct] comes within the inhibition of the statute." *Balint,* 258 U.S. at 254.

The Court acknowledges the hazard this may cause to the unwary. But the Court concludes that the addition of the affirmative defense helps ameliorate this concern because it allows a defendant to introduce the defense that he did not know of the illicit nature of the specific substance. Importantly, the affirmative defense "does not violate due process by abrogating the State's burden of proving the defendant's guilt beyond a reasonable doubt." *Burnette v. State*, 901 So. 2d 925, 927-28 (Fla. 2d DCA 2005). Indeed, regarding the affirmative defense, the Florida Standard Jury Instructions indicate, in relevant part: "If you have a reasonable doubt on the question of whether (defendant) knew of the illicit nature of the controlled substance, you should find (defendant) not guilty." *In re Standard Jury Instructions in Criminal Cases* (No. 2005-3), 969 So. 2d 245 (Fla. 2007). Notably, a similar affirmative defense was not present in the statutes addressed by the Supreme Court in *Balint*,

*Freed*, and *International Minerals & Chemical Corp.*, discussed *supra*, and those statutes passed constitutional muster.

Accordingly, the Court concludes that Florida's Drug Abuse Prevention and Control Law is not facially unconstitutional. Therefore, it is hereby ORDERED and ADJUDGED that Defendant's Challenge to the Government's Second Amended Information and Notice of Prior Conviction (Dkt. 329) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on October 26, 2011.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Even\2010\10-cr-327.crimchallenge329-floridadrugstatute.frm